We'll move now to Appeal 25-2231, D'Ambrosio v. Meta Platforms, Inc. et al. We'll begin with oral argument from the appellant, Mr. Trent. Thank you, Your Honors. Good morning. Good morning. May it please the Court, my name is Mark Trent, I represent Nikko D'Ambrosio. This Court reviews matters de novo, accepting well-pleaded allegations as true. This appeal presents two primary paths to reversal. First, the only right of publicity acts facility liability provision effective January 1, 2025, which Section 230 exempts as intellectual property. Second, negligence-based algorithmic design causing foreseeable harm under Anderson v. Ticktock and Lemon v. Stapp. I'll focus primarily on the Illinois Act, which presents the clearest ground for reversal. Before you get there, Mr. Trent, I'd like to focus on the defendant, Rahalas. Yes, Your Honor. You've sued them, Abigail and her parents. What is the basis for any claims against them? Well, the basis, Your Honor, she put the initial post up there. That was an expression of opinion, and I take it a vile message that your client sent to her, correct? There's no, first off, Your Honor, there's several things. There's no evidence my client sent a text message to her that was assumed. It has never been disputed by you in the District Court or in this Court, correct? Your Honor, we never had a chance to reach discovery to even dispute that matter, and there has been no determination. The District Court made that point, and you haven't disputed it in your appellate briefing? I have no evidence. Are you saying that Ms. Rahala made up that text? Yes, Your Honor. It's plausible she made up that text. I have no evidence that my client did. What is the basis for that assertion? Under Rule, keeping in mind Rule 11 of the Federal Rules of Civil Procedure, what is the basis for the assertion you just made? The assertion that my client did not send a text message? And that Ms. Rahala made it up? Is the fact that I believe my client did not send a text message? What's the basis for that belief? Well, I don't want to get into an attorney-client privilege, Your Honor, but... I don't want you to do that, but I want you to think about the possibility of Rule 38 sanctions and Section 1927 sanctions for the claims against the Rahalas. Your Honor, there's no evidence that my client sent a text message. I don't believe that he sent the text message. I don't want to get into an attorney-client privilege, but I have no evidence to believe that he sent that text message. The basis for the issue for defamation, now I understand that Judge Harjani used innocent construction, but putting that aside, Your Honor, if you could put... If you're featuring and focusing on this group, somebody could say Mark Trent called me five times today, Your Honor. If they say that Mark Trent called me five times today... Okay, sorry. Did you allege in your complaint that the posting of the message was false? The posting of the message that she... She attributed to your client. We attached it to the whole... Go on, if I may finish, Your Honor. Did you allege that was false? The text message that he sent? Yes. Based on my recollection, Your Honor, we filed the lawsuit based on the whole overall impact and implication of defamation, because it wasn't just Ms. Rojala that posted on there,  You have... Well, you can't sue a group for defamation here. People are responsible potentially for what they posted. What Ms. Rojala posted was an opinion about her dates with your client and this message that she said he had sent her, which is basically vile. And if you think that was defamatory, I didn't see that in your complaint. What did I miss? Your Honor, first off, the text... I don't believe my client sent the text message. The innocent construction, I understand Judge Harjani's ruling of the innocent construction. The overall implication of this group, in particular, as I was stating with my example, Your Honor, if somebody says Mark Trent called me five times today, that could mean that Mark Trent's a great attorney helping to settle my case. If they post on this site that Mark Trent called me five times today, the implication is Mark is some psychotic serial killer or stalker. And the problem with the statements that were made on this group is the implication behind it beyond the actual innocent construction. But Your Honor, if I may direct back, I believe our primary cases for reversal on this are not with defamation. It's more with the Illinois Right of Publicity Act and with the algorithmic negligence. So let me just go back to the Rahal. What's the claim against the Rahal is? The original post, Your Honor, with the defamation. It's the same thing... It's a defamation claim, right? Originally, Your Honor, yes. Thank you. On January 1st, 2025, Illinois enacted Section 1075.30d, any person who materially contributes to, induces, or otherwise facilitates a violation after having obtained actual knowledge may be found liable. The district court analyzed this as traditional misappropriation under Hudson. Whether Dean Brozio's identity helps sell metaservices. The court rejected the ads and engagement theory and never addressed Section 1075.30d, which creates distinct facilitator liability with different elements. Facilitates not direct use, actual knowledge not intent, liability for post-notice amplification, not just appropriation. This matter raises matters of first impression. What constitutes facilitation? What notice satisfies actual knowledge? Does algorithmic amplification with post-notice operation fall within scope? To date, no Illinois appellate decision has interpreted this provision, and therefore we believe remand is necessary. Now the complaint alleges that Dean Brozio... Mr. Trent, can I ask you some questions about your brief, please? Yes, Your Honor. Page four of your brief, you write, quote, courts have acknowledged that algorithmic activity aimed at increasing engagement can implicate the platform in content-based claims. Ordinarily, this is for your language, you're talking about meta. Ordinarily, I would expect that kind of a sentence to be followed by a citation to multiple cases. Your brief contains no citation to such cases. Am I missing something? Yes, Your Honor, I'm here to supplement that. With cases not cited in your brief? Well, cases previously that were... Well, Your Honor, the issue here is on the case with the algorithmic amplification that we're referencing, is there was some prior case law with Anderson v. TikTok and Lemon v. Snap. These are emerging law, Your Honor. And the application here in this case is... We ordinarily expect counsel to bring those cases to our attention when they make those kinds of claims. While I'm at it, let me turn you to page 14 of your brief. Yes, Your Honor. You have a paragraph that starts out, First, Illinois courts have consistently recognized that, quote, any other information that can be used to identify a specific individual, close quote, must be understood contextually. So on and so forth. Again, that's the kind of assertion I would ordinarily expect to be followed by a citation to multiple courts. Yes, Your Honor. Again, there is none. I understand that, Your Honor. Again, we're in... What is it you understand about that and would account for there being silence about your claim? Again, Your Honor, the case law is emerging case law here. There are two cases that are on point, Anderson v. TikTok and Lemon v. Snap. The issue with the cases, though... And are those the Illinois courts you're referring to here? Not on the Illinois courts, Your Honor. No. Okay. So what are the Illinois courts you're referring to here? And with those claims in the complaint? I'm talking about just what's in your brief. Illinois courts have consistently recognized that, quote, any other information that can be used to identify a specific individual, close quote, must be understood contextually. Well, that would be referenced to the Illinois Rate of Publicity Act, Your Honor, in the sense that with the... I'm going to ask one last time, and then I'm going to go to the next problem. But what are the Illinois courts you were referring to? Your Honor, I can't answer your question. That's what I thought. In the next paragraph, you wrote the following on page 14. Moreover, screen names, location tags, and group context provides the connective tissue that transforms partial identifiers into actionable disclosures. This view is supported by broader federal data privacy standards, which recognize PII to include, quote, any unique identifier that permits the physical or online contacting of a PC versus AccuSearch 570F3-1187, 10th Circuit, 2009. Have you reviewed the AccuSearch opinion? Not recently, Your Honor. I have not. Can you show me where that language appears in that opinion? Because this looks like a hallucination. It definitely not is a hallucination, Your Honor. Show it to me. Well, I had assistance with forming the case law, with putting together the brief, Your Honor. I'm sorry, say that again. My staff worked on the brief with me. I reviewed the full brief. I don't have the case law in front of me supportive of that question. So you're blaming this? No, I'm not blaming anybody, Your Honor. Everything falls down on me. I apologize.  Yeah. So where is it? I don't have that in front of me today, Your Honor. It is not there. Yeah. So what I'm trying to get across is I'm having trouble believing anything in your brief. I apologize for that, Your Honor. We have a good argument here for remand on several isolated issues. It's a complicated case against various defendants. It's a very heated case, Your Honor, with the defamation and text messages and going back and forth. But away from that, focus on the Illinois Right to Publicity Act and the algorithmic amplification with cases underlying TikTok and Lemon vs. Snap. Mr. Trent, would you mind if I ask you a question on that particular issue? Yes, Your Honor. Where in your complaint are there plausible allegations that Meta used your client's identity or likeness to generate advertising revenue? Thank you, Your Honor. So with our complaint, we made allegations that there was algorithmic amplification, user engagement, and so forth. Obviously, we didn't get to the stage of discovery where we've had plausible allegations on its face, but we're not allowed to engage in the discovery. I mean, what are the plausible allegations? That's my question, and not what would come out in discovery because you have to state a claim under Rule 8 and it has to survive dismissal. Yes, Your Honor. I believe we did satisfy under Twombly and Iqbal that there were algorithmic amplifications, and this is emerging law. So there's a post, there's algorithmic amplifications. Meta makes comments to the fact that they have story bumping. Can you point us to, I think the question was, can you point us to allegations in your complaint that answer Judge Scudder's question? I just don't think it's answered by saying Meta uses algorithms. They're going to say, of course we do. Right, and that's the issue, Your Honor. Again, I think we plausibly made allegations pursuant to Twombly and Iqbal to satisfy those plausible standards where it gets to the point where we do need. It wasn't grounds to dismiss on the 12b-6. We should be allowed to engage in discovery. All right, so I have your complaint in my hands. Where are the allegations? There were references in the complaint, Your Honor, to algorithmic amplification, user engagement, and those should be sufficient enough to satisfy. Again, it's emerging law, Your Honor. Nobody outside of Meta. Emerging law is not the Twombly-Iqbal standard or the Rule 8 standard. Yes, Your Honor, I understand, but I believe that we did satisfy plausibly those standards by making reference to the algorithmic amplification. So the reason I'm asking you the question is if your pleading suffices at that level of generality, the level of generality that you're arguing, I don't know what the limiting principle is. It would seem to me that anybody could come in and invoke the statute that you invoke and say that a social media platform is using this to generate revenue, and the statute would seem limitless to me. Not at all, Your Honor, because it goes beyond, you know, there's publisher content and product design, right? So if we're not going after Meta to say, hey, you're involved with publishing this material, that would be barred by Section 230. In this instance, it goes beyond that. It's product design and amplification. And number one, the question is, well, if they're involved in amplification of content that's being posted, are they involved in publishing that content now, number one? Number two, from a product design liability standard, are they liable for their product as determined in the Casey Anderson v. TikTok and Lemon v. Snap? So anybody that visits, under your view, anybody, at least it seems to me, I just don't know what the limit is. Anybody that visits a web page that has both an individual's identity and then somewhere nearby there is an advertisement, there's a claim. There's a claim stated. No, Your Honor, that doesn't work that way because that would go back to the traditional publisher liability. The fact that there's algorithmic amplification in this, it's involved in... There's a post, algorithmic amplification, interaction by users, further algorithmic amplification, and so on and so forth, and tied into monetization and ad revenue. So it's not just meta hosting in the traditional sense going back to the days of prodigy and Internet service providers. Hey, somebody posts something on their back. In the Middle Ages, somebody puts up a sign. The algorithmic amplification is now involved with the product that steps on the line now. Are we crossing over into publishing or are we crossing over to possibly negligent design on the algorithms like was determined in the TikTok case? Would you like to reserve the remainder of your time? Sir, if I could just ask one more question to follow up on that point. How is that different from... How would your reasoning apply, for example, to a newspaper or magazine that publishes a story about your client, puts a picture, puts his picture maybe in color on a page that has some advertising? The difference with that, Your Honor, is we're talking about newspapers. This is involving online. The law needs to catch up with the technology. How would this law apply to the newspaper or magazine hypothetical? Well, are we going after them for the only right of publicity with their image in itself, or are we going after them for product design negligence with regard to the... I'm asking under the IRPA. Thank you, Your Honor. So there's facilitator liability in that instance. There's actual notice that happened in our case, and that's pursuant to the new 107530D where they included the facilitator liability aspect. So in your theory, the newspaper or magazine would face IRPA liability? Yes, not in that instance. In the instance in my case, right? Because they just post a picture up there. That's one thing. If there's facilitator liability after actual notice with regard to that, and it's for commercial use, then that would fall within the statute 107530D. Thank you. Thank you, Your Honor. Thank you, Mr. Trent. We'll give you a bit of rebuttal time. Ms. Holliday, we'll move to you now for argument on behalf of the appellee. Thank you, Your Honor. May it please the court, Kristen Holliday for Appellee Meta Platforms. As the district court correctly held in a thoroughly reasoned opinion, each of D'Ambrosio's theories of liability is fundamentally flawed as a matter of Illinois law. Where D'Ambrosio addresses the district court's holdings at all, he fails to show any error, and we'd ask this court to affirm. I'd like to start by addressing the Right of Publicity Act claim. I think the theory I heard my friend on the other side articulate this morning, this facilitator liability theory, is different than the theory he pressed below and on appeal. So if you look at his briefs, his theory is that Meta itself commercially profited from his identity in the way that Judge Scudder asked him about. So his theory is that Meta posted his identity on its website, down the line sold third-party advertising. But as Judge Scudder... I think that's the only thing that's pled. I agree, Your Honor. We weren't talking about the complaint before, but I have it right in my hands. That's the only thing pled, and paragraph 28 is probably the one that gets closest to this. And it's all about Meta enriching itself. Yes, Your Honor, and that suffers from the same fatal defect that was present in Houston v. Hearst. So in Houston, the plaintiff alleged that her identity was contained within mailing lists that the defendant then sold to third parties. And what the court said was outcome determinative in that case is there was no plausible allegation that the defendant had held out Hearst's identity in the process of trying to induce third parties to buy these mailing lists. That's exactly the same fatal defect here. D'Ambrosio does not plausibly allege that Meta held out his particular identity to third-party advertisers in trying to sell advertisements. And as I think several of Your Honor's questions were pressing on, if D'Ambrosio were correct here, that would really be a limitless theory of IRPA liability. Any time an individual is pictured or written about on a website that also hosts third-party advertisements, under his theory, they would have a claim under IRPA so long as no other statutory exemption applies. But he points to no state court authority that suggests that the legislature intended liability that broad. And indeed, even if that reading were reasonable, which I don't agree that it is, this court has said when it's faced with competing reasonable interpretations of state law, it will choose the liability limiting construction where the state courts have not weighed in. So at a minimum, that principle would apply here. Also on the Right of Publicity Act claim, I heard my friend say that it's exempt from Section 230 under the intellectual property exception in Section 230. Again, that's not an issue that he pressed on appeal. The court doesn't need to reach it because Section 230 is not necessary to resolve these claims. They all suffer from independent fatal state law defects. I think I heard my friend almost concede that defamation is not their primary theory for reversal on appeal. I'm happy to address any questions that the court might have about the defamation claims, but I agree that they are fundamentally flawed, as the district court found as a matter of state law, and so it makes sense to me that D'Ambrosio is not pressing them here. Do you agree, sorry, just on that point, that it's necessary to actually allege the defamatory statements in order to state a claim for defamation? Yes, Your Honor, and we understand the only defamatory, allegedly defamatory statement he's pressing on appeal is this article about Anthony LaMonica, but the district court correctly... Has dismissed the claim against the person who posted that, right? That's correct, Your Honor. Ms. Holliday, there's a scenario where we don't reach the Section 230 arguments. If we do end up reaching the Section 230 arguments, is our court's case law in tension with other courts of appeals? So I'll answer the question, but first I'll agree with Your Honor. I think there's not only a scenario in which the court doesn't need to reach Section 230. I think that's the best way to resolve this case here is to affirm on exactly the same grounds that the district court ruled, but if the court does reach Section 230, I don't think its case law is meaningfully in tension with the law in other courts of appeals. So I read this court's decision in GG to recognize that if liability is premised on the publishing or speaking conduct of the defendant, then Section 230 comes into play, and here each of D'Ambrosio's claims rests on the idea that Meta published some third-party content. So as to the question presented here, no, I don't think this court's case law is relevantly in tension with the decisions of any other courts of appeals. Pivoting away from Section 230 for a moment, I do want to make sure that I talk about the product claims because I know my friend on the other side says that's their other primary basis for reversal here. So first, as just a threshold matter, the district court found that with respect to the product claims, the negligence claim, and the negligent entrustment claims, that D'Ambrosio had forfeited those claims below by failing to address Meta's arguments in favor of dismissal. And D'Ambrosio does not address that forfeiture holding here on appeal, either in his opening brief or his reply, so he's got a double forfeiture problem. But with respect to the products claims, he's wrong to say that Anderson or Lemon accepted a product liability theory. They sort of assumed that that was the cause of action at issue, but both of those cases were keyed on the Section 230 analysis and not on whether a claim existed under state law. And a claim does not exist under state law because Illinois recognizes that product liability is generally limited to tangible items and not services, as the district court correctly held. Here, D'Ambrosio's theory is that Meta provides a service. It provides the service of making third-party content available, and that is not a tangible product. So we cite cases in our brief, the James decision out of the Sixth Circuit, I think is analogous. Other courts have found that products like Facebook are not products in the relevant sense for product liability. They are, in fact, services, and those decisions are correct. Ms. Haldane, should we bring Ms. Catalano in? Yes, Your Honor. Thank you very much. I'm happy to. I apologize for cutting you off. No, not at all. Thank you so much. Thank you. Ms. Catalano? Thank you. May it please the court. I'm here to represent the spill-the-tea defendants, which is spill-the-tea Ms. Paula Sanchez and Blake Milbrand. I'd like to first just acknowledge the panel's questions to my friend on the other side here about whether his client authored the text that Ms. Rahala posts. This is something that we raised in the district court at least twice. We said that he didn't deny that he sent these texts. He had multiple opportunities to respond to that. He didn't. He never denied it. The district court held that he didn't deny it, and so for him to now argue on appeal that he doesn't think his client sent those texts, it's waived and it's, I think, borderline sanctionable. But in any event, I think the briefs in this case explain why the district court's thorough and well-reasoned opinion should be affirmed, and they largely rest on the briefs. I'd just like to, with the court's permission, very briefly touch on the Anti-Doxing Act claim, and simply because this is a relatively new statute and the plaintiff appears to argue that his claim should proceed so that the court could clarify the statute's limits. I think that's a baseless argument because I don't think that this claim approaches the statute's limits. The district court correctly held that the plaintiff doesn't plead even the most basic elements of a Doxing Act claim. Excuse me. And the fact that the act is new doesn't cure any pleading defects or somehow allow a claim to proceed in spite of pleading defects because federal courts are not in the business of offering advisory opinions on issues of state law. I can turn briefly to the elements of the Doxing Act claim, starting with the most basic element, that a post contained personally identifiable information, or PII. As the panel is aware, the posts here contain some garden-variety headshots of the plaintiff smiling for the camera and his first name under any reasonable reading of the Doxing Act that's not PII. The statute defines PII as including things like social security numbers, medical records, sexually explicit photos, not the sort of garden-variety photos that we have here. And the Acts Catch All provision specifically states that PII has to be sensitive or private. We just don't have that here. This is information that people put out to the world on a daily basis, just going about their normal business. I think the claim fails also because the plaintiff hasn't pled the requisite intent or knowledge or harm. For all of these factors, he just parrots the statutory language that doesn't satisfy Iqbal or Twombly. And so for all these reasons, we ask the court to affirm. And if there are no questions, I'm happy to cede my two minutes. Thank you, Ms. Catalano. Thank you. Mr. Trent, we'll move back to you for rebuttal. We'll give you two minutes. Thank you, Your Honor. First off, on the waiver claim, that's not a judicial bar. Number two, I believe Judge Harjani, even though he mentioned waiver in his ruling on three different counts, he still applied the law to those counts anyway. So it doesn't seem that waiver was fundamentally applied consistently throughout. Your Honors, going back, I think the best count we have on this case represents the Illinois facilitator liability with actual knowledge. It was not addressed. Council mentioned Section 230. The Illinois Right of Publicity Act is codified basically as an intellectual property statute. Therefore, 230E2 provides an exception to intellectual property. So it should be applicable in this case where it's not exempt by Section 230. As a result of that, we believe that remand is appropriate. Further, the allegations that plaintiffs are alleging that algorithmic systems can cause foreseeable harm after notice, we believe that discovery is essential. We believe that we've satisfied Twombly and Iqbal. There's a plausibility we were blocked from doing any type of discovery on this case and that it was dismissed prematurely. Thank you. Thank you, Mr. Trent. Thank you, Ms. Holiday. Thank you, Ms. Catalano. The case will be taken under advisement.